IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAMEON COLE, # R-13404,            )
                                   )
                   Plaintiff,      )
                                   )
                                   )
vs.                                )   Case No. 3:12-cv-686-MJR
                                   )
GOV. QUINN, et al.,                )
                                   )
                   Defendants.     )
                                   )

MEMORANDUM AND ORDER

REAGAN, District Judge:

Plaintiff Dameon Cole, an inmate in Pontiac Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on incidents that occurred while Plaintiff was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff is serving a twelve-year sentence for robbery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim

1

upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**The Complaint**

The following summary derives from the allegations stated in Plaintiff's complaint.

Plaintiff self-identifies as a "flamboyant openly-known homosexual, who carries [him]self as a female" (Doc. 1, p. 15). Pickneyville does not segregate inmates based on sexual orientation. Because of this, Plaintiff fears for his safety. Indeed, of the thirty-three Defendants named, twenty-four failed to protect Plaintiff from potential

attack by other inmates. On December 12, 2011, Plaintiff's cellmate, Inmate Lara, began pressuring him to engage in a sex act. On December 15, 2011, Plaintiff went on suicide watch as a way to avoid interactions with Inmate Lara and attract prison staff's attention to his housing situation. Plaintiff requested protective custody and "vulnerable" status because of his cellmate's advances, but was denied. On December 19, 2011, an unnamed inmate living in Plaintiff's cell house requested sex from Plaintiff. Plaintiff repeated his previous steps of going on suicide watch and requesting vulnerable status, but was again denied.

On January 16, 2012, Plaintiff was moved to the general population where his new cellmate told him that he could not stay there, and the guards would have to move one of them to a new cell. Plaintiff and his cellmate requested cell changes, but changes were denied by prison staff. On March 9, 2012, Plaintiff was placed in a cell with Inmate Draper, who told Plaintiff that he was homophobic. Plaintiff and his new cellmate both notified several correctional officers that they were unhappy with their housing situation, but to no avail. Since his incarceration at Pinckneyville, Plaintiff has written a litany of letters and grievances to the prison administration regarding his housing conditions and fear of inmate attack. Many of the correctional officers at Pinckneyville have made derogatory and offensive comments about Plaintiff's sexual orientation and self-identification as a female.

Additionally, Plaintiff has suffered from false disciplinary reports and inadequate disciplinary hearings twice during his time at Pinckneyville. On March 23, 2012, Plaintiff was charged with intimidation by Defendant Camp and sentenced to two months of C-grade and segregation. On April 2, 2012, Plaintiff was charged with sexual

3

misconduct by Defendant Harmon and sentenced to six months of C-grade and segregation with six months' good conduct credit revoked.  Plaintiff claims that both incidents were fraudulently reported and that a guilty plea was entered for him on both occasions in his absence and without his consent.

Plaintiff seeks a preliminary and permanent injunction mandating segregated housing for homosexuals in Illinois Department of Corrections ("IDOC") facilities.  Plaintiff also requests compensatory and punitive damages from each of the thirty-three Defendants named in the complaint.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1 – Failure to Protect**

Plaintiff claims that twenty-four IDOC and Pinckneyville officials[1] have shown deliberate indifference to ongoing threats of inmate attacks.  In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).  However, not every harm caused by another inmate translates into constitutional

---

[1] In his complaint, Plaintiff implicates the following individuals in this claim:  Defendants Quinn, Godinez, Taylor, Bates, Benton, O'Day, Gaetz, Rednour, Wilson, Deen, Pickering, Cleland, Bradly, Reeves, Wallace, Myers, McBride, Samoliasky, Clark, Furlow, Ruebke, Collier, Ramsey, and Epplin.

liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834.  In order for a plaintiff to succeed on a failure to protect claim, he must show he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger.  *Id.*; *Pinkston*, 440 F.3d at 889.  A plaintiff also must prove prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety.  *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

A defendant in a failure-to-protect claim cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."  *Farmer*, 511 U.S. at 843 (a substantial risk of harm to a prisoner may exist where he "faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk"); *see also Hill v. Godinez,* 955 F. Supp. 945, 949 (N.D. Ill. 1997) (summary judgment denied for defendant who refused plaintiff's request for protective custody where plaintiff "apparently did everything except identify by name" the inmates who were threatening him, and plaintiff was then attacked by gang members).  Under this authority, a plaintiff's inability to identify by name each inmate who threatened him does not make the threat insufficiently specific or credible.

Based on the facts alleged in Plaintiff's complaint, it is unnecessary to consider the individual roles of each of the twenty-four Defendants named in Plaintiff's failure-to-protect claim.  The claim resolves into three specific instances where he was

5

celled with inmates whom he considered to be a threat to him. Plaintiff was twice celled with inmates who asked him engage in sexual acts with them. Plaintiff refused these advances without incident. The third occurrence (on March 9, 2012) involved Plaintiff's cellmate telling him that he was homophobic. No actual assault against Plaintiff is alleged to have occurred.

These facts doom Plaintiff's failure-to-protect claim. He cannot "state a claim for having been exposed to the unrealized risk of assault…." *Donelson v. Prado,* 2011 WL 941233, *4 (N.D.Ill. 2011). "However legitimate [Plaintiff's] fears may have been,... it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id., quoting Babcock v. White,* 102 F.3d 267, 272 (7th Cir.1996).

Stated another way, Plaintiff alleges "not a 'failure to prevent harm,' *Farmer*, 511 U.S. [at 843-44] …, but a failure to prevent exposure to risk of harm." *Babcock*, 102 F.3d at 272. "This does not entitle [Plaintiff] to monetary compensation." *Id., citing Carey v. Piphus,* 435 U.S. 247, 258-59 (1978) ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question - just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.").

Furthermore, as to injunctive relief, since filing his complaint Plaintiff has been transferred from Pinckneyville. Thus, his prayers for injunctive relief are effectively moot because of his transfer to a different facility. *Maddox v. Love,* 655 F.3d 709, 716 (7th Cir. 2011), *citing Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009). Plaintiff has

6

not alleged that there is a reasonable possibility that he will be again incarcerated at Pinckneyville and subjected to the conditions at issue herein, so any relief accorded "would be purely speculative in nature." *Id.* (citations omitted).

Plaintiff's allegations state no claim upon which relief can be granted, so his failure-to-protect claim will be dismissed with prejudice.

**Count 2 – Denial of Grievances**

Plaintiff claims that Defendants Benton, Gaetz, Deen, and Hartman, by denying his grievances and by failing to accord him due process at grievance hearings have violated his First Amendment rights. Plaintiff claims that the grievance process, as implemented, works to silence his voice while in prison.

The Seventh Circuit Court Appeals has decided (emphatically) that the Fourteenth Amendment creates no substantive due-process right to an inmate grievance procedure. *Grieveson v. Anderson,* 538 F.3d 763, 772 (7th Cir. 2008), *citing Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir.1996) ("With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *see also Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) ("alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim"). The procedural due process right "exists to ensure that prisoners and detainees can access the courts." *Id., citing Antonelli*, 81 F.3d at 1430.

Plaintiff does not claim that the grievance procedure, as implemented by prison officials at Pinckneyville, prevented him from accessing the courts. Moreover,

the filing of the instant action evidences Plaintiff's right of access to the courts.  *See id.* ("[Plaintiff's] invocation of the judicial process indicates that the prison has not infringed his First Amendment right to petition the government for a redress of grievances.").

Furthermore, Plaintiff admittedly continues to enjoy access to grievance procedures.  The Seventh Circuit suggests that a denial of grievances does not give rise to a First Amendment claim where the grievance process is available to the plaintiff. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (where plaintiff had access to the grievance procedure but did not obtain the outcome he desired, his argument that prison officials conspired to deny administrative review of his grievances was frivolous). Therefore, Plaintiff has no legal basis for his conclusion that a denial of grievances, in and of itself, violates his constitutional rights.  Accordingly, this claim shall be dismissed with prejudice as frivolous.

**Count 3 – Verbal Harassment**

Plaintiff asserts that he was subjected to cruel and unusual punishment through the hurtful and offensive remarks of Defendants Camp, Myers, Harmon, Crabtree, Graves, Ruebke and Ramsey concerning his sexual orientation.  "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."  *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).  While the remarks alleged in Plaintiff's complaint could be considered unprofessional and inappropriate, standing alone they do not rise to the level of an Eighth Amendment violation. Therefore, this claim shall be dismissed with prejudice.

**Count 4 – False Disciplinary Charges**

Plaintiff alleges that Defendants Klindworth, Camp, Myers, McBride and Harmon denied him proper hearings for disciplinary charges he claims were fraudulent. In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of intimidation by Defendant Camp and sexual misconduct by Defendant Harmon. Plaintiff then allegedly had guilty pleas entered for him while being denied access to his own disciplinary hearings. Plaintiff's complaint suggests that he was denied one or more of the procedural protections in *Wolff*. However, even if Plaintiff was not afforded those procedural protections, he still may not have an actionable claim.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id.* at 484. Furthermore, the Supreme Court held that while a state could create a liberty interest

protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as administrative segregation and protective custody. *Id.* at 486.

### A – Segregation

In both of the allegedly faulty hearings, Plaintiff was sentenced to terms of disciplinary segregation. In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.* at 1176.

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest – under either the Due Process Clause or state law – so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. Subsequent opinions by the Seventh Circuit have explained that where the duration of confinement in segregation is relatively short, no liberty interest will be implicated. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 n.2 (7th Cir. 2009) (collecting cases).

10

Plaintiff's complaint does not allege any facts that would suggest his confinement in disciplinary segregation was substantially more restrictive than conditions at the most secure prison in Illinois. Furthermore, Plaintiff's term of segregation is relatively short in comparison to his original twelve-year sentence. As to the imposition of this particular punishment, Plaintiff has failed to describe an atypical or significant deprivation that would create a liberty interest under the Due Process Clause. Therefore, this claim shall be dismissed with prejudice.

### B – C-grade

Similarly, Plaintiff takes issue with being classified as C-grade as a result of these two allegedly inadequate hearings. In order to state a Fourteenth Amendment due process claim, however, Plaintiff would have to assert that he has lost a liberty interest in his demotion to C-grade. Seventh Circuit precedent makes clear that demotion to C-grade status does not warrant a due process claim, as "revocation of privileges is within the expected scope of a prison sentence." *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995); *see Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997). Thus, this claim shall be dismissed with prejudice.

### C – Good Conduct Credit

During his April 2, 2012, disciplinary hearing, Plaintiff had six months of good conduct credit revoked by Defendants Klindworth and Myers based on an allegedly false report filed by Defendant Harmon. A loss of good conduct credit does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence. As such, Plaintiff does present a cognizable due process claim regarding good time credit revoked in this disciplinary proceeding.

However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994); *Dupree v. Jones*, 281 Fed.Appx. 559, 560 (7th Cir. 2008) ("A state prisoner seeking restoration of lost good-time credits must exhaust state-court remedies before turning to federal court, or else show cause and prejudice for failing to exhaust."). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101, *et seq.*, to consider the merits of Plaintiff's claim. Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

**<u>Request for Preliminary and Permanent Injunction</u>**

Plaintiff requests a preliminary and permanent injunction segregating homosexual inmates from the general prison population in all IDOC facilities. In *Farmer,* the Supreme Court indicated injunctive relief would be an appropriate remedy for a prisoner who received a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat). Prior to *Farmer*, courts recognized a prisoner need not wait until he is actually

12

assaulted before he may obtain relief. *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001).

"Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998) (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987)) (additional citations omitted).

Plaintiff's request shall be denied, as he has not received a credible threat of attack. Further, Plaintiff's request is far too overbroad to serve his personal protection from fellow inmates. Finally, Plaintiff's failure-to-protect claim is dismissed with prejudice, and thus, this injunction would serve no legitimate purpose in resolving Plaintiff's dispute with Defendants. Therefore, Plaintiff's request for a preliminary and permanent injunction is **DENIED** as moot.

### Disposition

**IT IS HEREBY ORDERED** that the Clerk shall add **GRIEVANCE OFFICER HARTMAN** as a Defendant in this case.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** with prejudice as frivolous. **COUNTS 1, 3, 4A,** and **4B** fail to state a claim upon which relief can be granted and thus are **DISMISSED** with prejudice. **COUNT 4C** is dismissed without

prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***. **DEFENDANTS QUINN, GODINEZ, TAYLOR, BATES, BENTON, O'DAY, GAETZ, REDNOUR, WILSON, DEEN, PICKERING, CLELAND, BRADLY, WILLIAMS, CAMP, REEVES, WALLACE, BASOLO, MCBRIDE, CRABTREE, GRAVES, SAMOLIASKY, CLARK, FURLOW, JAMES, RUEBKE, COLLIER, RAMSEY, EPPLIN,** and **HARTMAN** are dismissed with prejudice. **DEFENDANTS KLINDWORTH, MYERS,** and **HARMON** are dismissed without prejudice.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED: 8/9/2012**

s/ MICHAEL J. REAGAN
Michael J. Reagan
United States District Judge
